UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA ASHLEY LIMON,

               Petitioner,

                                      Civil Case No. 18-10772
v.                                    Honorable Linda V. Parker

SHAWN BREWER,

               Respondent.

_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

Andrea Ashley Limon ("Petitioner") filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her state criminal proceedings when she was a Michigan prisoner in 2018.   Petitioner pleaded guilty to second-degree child abuse, Mich. Comp. Laws § 750.136b(3), with a promise to stipulate to the termination of her parental rights as to her daughter and unborn baby in the Grand Traverse County Circuit Court, and was sentenced to 4 years 9 months to 10 years imprisonment in 2015.   In her original petition, Petitioner raised claims concerning the termination of her parental rights, her innocence and the factual basis for her plea, the validity of her sentence, and the effectiveness of

defense counsel.   (ECF No. 1.)

In November 2018, on Respondent's motion, the case was stayed while Petitioner completed collateral review in the state courts.   (ECF No. 10.)   In June 2019, on Petitioner's motion, the case was reopened for her to proceed on an amended petition raising claims concerning the voluntariness of her plea and the termination of her parental rights, the factual basis for her plea, the validity of her sentence, and the effectiveness of trial and appellate counsel.   (ECF Nos. 12, 14.) In August 2019, Respondent filed an answer to the amended petition contending that it should be denied because one claim is procedurally defaulted in part and all of the claims lack merit.   (ECF Nos. 16.)   In October and November 2019, Petitioner filed a reply to that answer and a supplement to that reply.   (ECF Nos. 18, 20.)

On November 5, 2019, Petitioner was released on parole.   *See* Offender Profile, Michigan Department of Corrections Offender Tracking Information System, http://mdocweb.state.mi.us/otis2profile.aspx?mdocNumber=953270 (first accessed on Nov. 27, 2019).   While the case was pending, several of the Court's mailings to Petitioner at her listed address were returned to the Court as undeliverable.   (ECF Nos. 26, 27, 29.)   Petitioner was then discharged from state custody on February 5, 2021, *see* Offender Profile, *supra* (last accessed on Feb. 11,

2021), and the Court had no known address for her.   Consequently, the Court

dismissed without prejudice her petition.   (ECF No. 30.)   Petitioner eventually

learned of the dismissal and moved for reconsideration seeking to reopen the case.

(ECF No. 33.)   On April 30, 2021, the Court granted that motion and reopened the

case for further review.   (ECF No. 35.)

Having reviewed the pleadings and the state court record, and for the reasons

stated herein, the Court finds that Petitioner is not entitled to habeas relief on her

claims and denies the habeas petition.   The Court also denies a certificate of

appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's conviction arises from her physical abuse of her boyfriend's

four-year-old daughter, J.F., at their home in Grand Traverse County, Michigan in

2014.   At the preliminary examination, an emergency room physician testified that

the victim had bruises in various stages over nearly her entire body, broken and

missing hair with bald spots, abrasions, and petechiae, and that she was small for

her age with low body fat.   He did not believe that the victim's injuries were self-

inflicted.   (ECF No. 7-2 at Pg ID 395-398.)   The victim, who was then five years

old, testified that Petitioner was the person who pinched her arms and hurt her

chest and stomach, and that Petitioner spanked her when she disobeyed.   (*Id*. at

Pg. ID 370, 378-80, 391.)   Photographs of the victim taken when she was at the hospital were also admitted.   (ECF No. 7-3, PageID.460.)   One of those photographs apparently showed four adult fingermarks on the victim's back. (ECF No. 7-3 at Pg. ID 477.)

Petitioner was charged with first-degree child abuse and torture.   On January 5, 2015, in exchange for the dismissal of those charges, Petitioner agreed to plead guilty to one count of second-degree child abuse and to stipulate to the termination of her parental rights as to her own toddler daughter and unborn child in family court.   (ECF No. 7-5, Pg. ID 499-500.)   At the plea hearing, the following colloquy occurred:

> THE COURT: . . . Ms. Moeggenberg, why don't you begin and state your understanding of the agreement.
>
> [PROSECUTOR]:   My understanding is Ms. Limon will be pleading guilty to child abuse second degree, a 10-year felony, it would be a reckless act causing serious physical and mental harm to [J.F.].   In exchange for that our office is dismissing the original charges, torture and child abuse first degree. Also, my understanding is within, not in this Court but in Family Court, Ms. Limon is not going to be contesting termination of her parental rights of daughter, [Z.F.].   It's my understanding also Ms. Limon is pregnant, any disposition made with regard to that there would be also a voluntary termination, she does not have the rights of that child, if she does not have some other legal process set up for planned adoption or something of that nature.
>
> THE COURT:   What did you say are the elements of child abuse second degree?

[PROSECUTOR]:   It's going to be that she has the care or custody and that she committed a reckless act that caused serious physical and/or serious mental harm to [J.F.].

THE COURT:   The operative date we're going to be using, or time period?

[PROSECUTOR]:   The weekend of 4/20 to 4/22, April 20th to the 22nd of 2014.

THE COURT:   Within Grand Traverse County?

[PROSECUTOR]:   Yes.

THE COURT:   Mr. Jarboe, I know you've talked at some length with Ms. Moeggenberg regarding this arrangement, has she now accurately described the sum and substance of your conversation with her?

[DEFENSE COUNSEL]:   Yes, she has.

THE COURT:   You and she both know this Court does not engage in sentence bargains, has that been made clear to your client as well?

[DEFENSE COUNSEL]:   Very much.   We had an opportunity to review the sentencing guidelines for not only the potential conviction at trial, but also the plea offer made and apparently if accepted those are the guidelines that will be to the Court but the Court has discretion to either exceed or go underneath the guidelines if it finds appropriate cause.

THE COURT:   In any sense, do you think Ms. Limon has been bullied, threatened, coerced into accepting the guilty plea?

[DEFENSE COUNSEL]:   I would want to put on the record we have spent as much time as possible with Ms. Limon, not only in terms of trial preparation and her defenses and all of the elements of the case,

but also as much time as possible to explain the plea offer once it was made and the advantages and disadvantages of the offer.

THE COURT:   Most attorneys say we, but you are here with your associate, Ms. Pfeil, and she has been actively involved in this case as well.

* * *

THE COURT:   Ms. Moeggenberg, would you likewise agree that there have been no additional promises and no threats and no coercion?

[PROSECUTOR]:   Correct.

THE COURT:   I need you to raise your right hand, if you would. Do you solemnly swear or affirm that the testimony you are about to give, will be the truth, the whole truth, and nothing but the truth?

DEFENDANT LIMON:   I do.

THE COURT:   State for me your full name.

DEFENDANT LIMON:   Andrea Ashley Limon.

THE COURT:   How old are you?

DEFENDANT LIMON:   Twenty-seven.

THE COURT:   How far did you go in school?

DEFENDANT LIMON:   Graduated high school.

THE COURT:   Any difficulties reading or writing?

DEFENDANT LIMON:   No.

THE COURT:   And, have you worked with Mr. Jarboe and his partner in the preparation of this case?

DEFENDANT LIMON:   Yes, I have.

THE COURT:   The charges are very serious, I am sure you must have had many, many questions.   Did you sit down with them and carefully work your way through those questions and the answers?

DEFENDANT LIMON:   Yeah.

THE COURT:   Have all of your questions been answered for you?

DEFENDANT LIMON:   I believe so.

THE COURT:   Have you understood the answers and advice you received?

DEFENDANT LIMON:   Yeah.

THE COURT:   Is there anything further you would like to discuss privately with your attorneys before you accept this offer?

DEFENDANT LIMON:   No, I think we've talked about it.

THE COURT:   You understand if the court accepts the offer you will be convicted of a felony, and in the worst case situation you could spend as much as 10 years in a Michigan prison?

DEFENDANT LIMON:   Yes, sir.

THE COURT:   Do you also understand that as an individual accused of a crime you are presumed innocent of the charges?

DEFENDANT LIMON:   Mm-hmm.

THE COURT:   You have to say either yes or no.

DEFENDANT LIMON:   Yes, sir.

7

THE COURT:   In fact this matter was scheduled to go to trial tomorrow.

DEFENDANT LIMON:   Yes.

THE COURT:   If you wished we would have a full jury trial, I understand it would be four, and perhaps more, days in duration, there are a number of witnesses that would come here and your lawyer would confront and cross-examine them.

DEFENDANT LIMON:   Yes.

THE COURT:   He has the ability with subpoena power to compel people to be here who might testify favorably for you.

DEFENDANT LIMON:   Yes.

THE COURT:   And, if you wished you could personally testify.

DEFENDANT LIMON:   Yes.

THE COURT:   You understand you have no personal obligation to do that, every defendant has the absolute right not to testify and the Court instructs such to you and to the jury that silence is not evidence and it can't be used as evidence. You understand you could have completed the trial and not testified?

DEFENDANT LIMON:   I understand that.

THE COURT:   I'm going through these with you, I know they are on that sheet of paper with you, but because we are on the edge of trial I thought it was important we have this conversation. You understand then what a criminal trial involves?

DEFENDANT LIMON:   Yes, sir.

8

THE COURT:   Your lawyers are prepared to go to trial if you wished to do so and not enter this plea agreement.

DEFENDANT LIMON:   Yes, sir.

THE COURT:   Do you believe that the agreement has been fully and accurately stated on the record?   In other words, was there something promised to you that hasn't been described to me?

DEFENDANT LIMON:   No, sir.

THE COURT:   Have you in any sense been threatened or coerced into pleading guilty?

DEFENDANT LIMON:   No, sir.

* * *

THE COURT:   You haven't been in an altercation, haven't been threatened or coerced by anyone? In no sense has a witness to this case or your husband been involved in bullying you into a guilty plea?

DEFENDANT LIMON:   No, sir.

THE COURT:   Your husband was also charged?

DEFENDANT LIMON:   He's my boyfriend.

THE COURT:   I'm sorry, your boyfriend was also charged?

DEFENDANT LIMON:   Yes.

THE COURT:   He pled guilty pursuant to a plea agreement?

DEFENDANT LIMON:   Yes.

THE COURT:   He was prepared to testify against you?

9

DEFENDANT LIMON:   Yes, sir.

THE COURT:   I assume you are pleading guilty here because you accept responsibility for your own behavior and not because you have been threatened or coerced?

DEFENDANT LIMON:   Yes, sir.

THE COURT:   All right. Do you have the advice of rights form?
[DEFENSE COUNSEL]:   I do, your Honor.

THE COURT:   Again, we've gone through most of these again, but do you have any questions about your rights?

DEFENDANT LIMON:   No, sir.

THE COURT:   You signed the form indicating you understand these and wish to give them up to accept this agreement.  If you had any remaining questions I would be happy to answer them.

DEFENDANT LIMON:   I understand.

THE COURT:   And, is it still your desire to give them up and accept this plea offer?

DEFENDANT LIMON:   Yes, sir.

* * *

THE COURT:   The felony information would indicate that this crime occurred between April 20th and 22nd of last year, 2014, here in Grand Traverse County.   During that time period were you physically located in Grand Traverse County, here in the State of Michigan?

DEFENDANT LIMON:   Yes, sir.

THE COURT:   And the child at issue, what's her name?

10

[DEFENSE COUNSEL]:   [J.F.], your Honor.

THE COURT:   Is [J.F.] your boyfriend's daughter by another relationship or is she your child?

DEFENDANT LIMON:   His daughter through another relationship.

THE COURT:   And, was the daughter, [J.F.], within your care or custody between April 20th and 22nd of 2014?

DEFENDANT LIMON:   Yes, sir.

THE COURT:   I don't want to know what he did, your boyfriend did, but in that time period did you personally do something that was reckless that caused [J.F.] physical harm?

DEFENDANT LIMON:   I believe that.

THE COURT:   That's a yes or no question.

DEFENDANT LIMON:   Yes.

THE COURT:   Perhaps you could ask your client a couple additional questions, I'm not familiar with the details.

[DEFENSE COUNSEL]:   I would be happy to. Andrea, is it true during the Easter weekend, the dates the Court enumerated, both you and Joe Franks had custody of [J.F.] during Sunday, Monday, Tuesday and Wednesday morning of that weekend?

DEFENDANT LIMON:   Yes.

[DEFENSE COUNSEL]:   Is it true during that time period that [J.F.] ended up sustaining serious physical injury, including significant bruising to her body?

DEFENDANT LIMON:   Yes.

11

[DEFENSE COUNSEL]:   And, that was while she was in your custody and Joe Frank's custody, is that correct?

DEFENDANT LIMON:   Yes.

[DEFENSE COUNSEL]:   You acknowledging that at the time you were caring for [J.F.] that you were reckless in terms of bathing her, taking care of her, physically controlling her to the extent that you would have contributed to causing physical injuries she had?

DEFENDANT LIMON:   Yes.

* * *

THE COURT:   I would agree if we're looking at the jury instructions it does not require intent. The manner in which you were taking care of the child, you were aware the behavior you were exhibiting towards this child was not appropriate, it was reckless and actually did result in serious physical harm to the child?

DEFENDANT LIMON:   Yes.

THE COURT:   All right. Ms. Moeggenberg, are you satisfied that during the time period we've been discussing you have the elements of at least one count of child abuse in the second degree?

[PROSECUTOR]:   Yes, your Honor.

THE COURT:   Mr. Jarboe, how about you?

[DEFENSE COUNSEL]:   Yes.

THE COURT:   Anything at all you would like me to discuss in addition with your client, especially on the eve of trial?

[DEFENSE COUNSEL]:   I think the Court was thorough and asked all the appropriate questions.

12

THE COURT:   All right. Anything for the People?

[PROSECUTOR]:   No.

THE COURT:   Don't be shy, any remaining questions about the plea agreement you are entering into, the rights you are surrendering, the trial that would otherwise start tomorrow morning, you have any questions at all?

DEFENDANT LIMON:   No, sir, I think I talked to my attorney extensively about it.

THE COURT:   All right.

DEFENDANT LIMON:   I have an understanding.

THE COURT:   It is a 10-year felony charge that is child abuse in the second degree, a single count, how do you plead?

DEFENDANT LIMON:   Guilty.

(ECF No. 7-5 at Pg ID 499-512.)

On February 6, 2014, the trial court conducted a sentencing hearing and then sentenced Petitioner to 57 months (4 years 9 months) to 120 months (10 years) imprisonment in accordance with the state sentencing guidelines.   (ECF No. 7-6.)

Following her plea and sentencing, Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising claims concerning the scoring of several offense variables of the sentencing guidelines and the proportionality of her sentence, her due process rights and the voluntariness of her

13

plea relative to the termination of her parental rights, and the factual basis for her

plea.   (ECF 7-12 at Pg. ID 1243-45.)   Petitioner also briefly referenced equal

protection and ineffective assistance of counsel issues in the body of her

application (but not in the headings as grounds for relief).   (ECF No. 7-12, Pg. ID

1293, 1300.)   The court denied the application for lack of merit in the grounds

presented.   *See People v. Limon*, No. 328701 (Mich. Ct. App. Sept. 28, 2015);

ECF No. 7-11, Pg ID 628.   Petitioner filed an application for leave to appeal with

the Michigan Supreme Court raising the same claims (ECF No. 7-13, Pg. ID 1729-

31), which was denied in a standard order.   *People v. Limon*, 499 Mich. 916, 877

N.W.2d 724 (2016).   Petitioner filed a request for reconsideration (ECF No. 7-13

at Pg ID 1833-1936), which was also denied.   *People v. Limon*, 499 Mich. 981,

881 N.W.2d 484 (2016).

Petitioner thereafter filed a motion for relief from judgment raising claims

concerning the voluntariness of her plea and her due process rights, the factual

basis for her plea, the scoring of the sentencing guidelines and the proportionality

of her sentence, and the effectiveness of trial and appellate counsel.   (ECF No. 7-7

at Pg. ID 548.)   The trial court denied the motion pursuant to Michigan Court Rule

6.508(D) and on the merits.   *People v. Limon*, No. 2014-011931-FC (Grand

Traverse Co. Cir. Ct. Dec. 11, 2017), ECF No. 7-10 at Pg. ID 618-627.   Petitioner

then filed a delayed application for leave to appeal and a motion for peremptory reversal with the Michigan Court of Appeals.   (ECF No. 7-14 at Pg ID 2033-68.) The court denied the application for failure to establish that the trial court erred in denying relief from judgment and denied the motion for failure to persuade the court of manifest error requiring reversal and peremptory relief.   *People v. Limon*, No. 344226 (Mich. Ct. App. Nov. 5, 2018).   Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was denied pursuant to Michigan Court Rule 6.508(D).   *People v. Limon*, 927 N.W.2d 259 (Mich. 2019).

Petitioner now seeks federal habeas relief.   In her habeas petition, as amended, she raises the following claims as grounds for relief:

I.   Her guilty plea violated her due process and equal protection rights and was involuntary where she was forced or coerced to terminate her parental rights and where the consequences of her plea were not adequately explained to her on the record.

II.   She is innocent and the factual basis for her guilty plea was inadequate.

III.   Her sentencing guidelines were improperly scored based on untrustworthy hearsay and inaccurate information and her sentence is disproportionate.

IV.   She received ineffective assistance of trial and appellate counsel.

(ECF No. 1 at Pg ID 15-16; ECF No. 12 at Pg ID 2145-47.)

## III.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because

Petitioner filed her petition after its effective date.    *See Lindh v. Murphy*, 521 U.S.

320, 336 (1997).   The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'"   *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.   However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.   The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.   The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v.*

17

*Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that

even a strong case for relief does not mean the state court's contrary conclusion

was unreasonable."   *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   A

habeas court "must determine what arguments or theories supported or . . . could

have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision" of the Supreme Court.   *Id*.

Thus, in order to obtain federal habeas relief, a state prisoner must show that the

state court's rejection of a claim "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement."   *Id.*; *see also White v. Woodall*, 572 U.S. 415,

419-20 (2014).   Federal judges "are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that

they were wrong."   *Woods v. Donald*, 575 U.S. 312, 316 (2015).   A habeas

petitioner cannot prevail as long as it is within the "realm of possibility" that

fairminded jurists could find the state court decision to be reasonable.   *Woods v.

Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of

whether the state court's decision comports with clearly established federal law as

18

determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412;   *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72.   Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"   *Harrington*, 562 U.S. at 100.   Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent.   Thus, federal circuit or district court cases do not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief.   *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).   The decisions of lower federal courts, however, may be useful in assessing the

reasonableness of a state court's decision.   *Stewart v. Erwin*, 503 F.3d 488, 493

(6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003));

*Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on

federal habeas review.   28 U.S.C. § 2254(e)(1).   A petitioner may rebut this

presumption with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358,

360-61 (6th Cir. 1998).   Habeas review is also "limited to the record that was

before the state court."   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Discussion

### A.   Involuntary Plea Claim

Petitioner first asserts that she is entitled to habeas relief because her plea

violated her due process and equal protection rights.   In particular, she asserts that

her plea was involuntary and unknowing because she was forced/coerced to

terminate her parental rights, the trial court did not adequately explain the

consequences of her plea, and she was treated differently than other criminal

defendants and parents.[1]   Respondent contends that this claim lacks merit and

---

[1] Petitioner also asserts that trial counsel gave her incorrect advice on child abuse law.   The Court will address trial counsel's effectiveness under a separate heading as Petitioner and Respondent have done so.

20

that any equal protection claim is unexhausted and procedurally defaulted.

Petitioner raised this issue, in part, on direct appeal and the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (ECF No. 7-11 at Pg. ID 628.) She also raised the issue, in part, on collateral review and the trial court denied relief finding that the record of the plea hearing, including Petitioner's own statements at that hearing, established that her plea was knowing, intelligent, and voluntary. (ECF No. 7-10 at Pg ID 620-22.)

The state courts' denials of relief are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755

21

(1970).   The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."   *Id.* at 749.

In this case, the plea hearing record reveals that Petitioner's plea was knowing, intelligent, and voluntary.   Petitioner was 27 years old at the time of her plea, had a high school education, and had no difficulties reading or writing. There is no evidence that she suffered from any physical or mental problems that impaired her ability to understand the criminal proceedings or her plea agreement. Petitioner was represented by legal counsel, conferred with counsel throughout the proceedings, and expressed satisfaction with counsel's conduct.   Petitioner was advised that she would be giving up certain rights by pleading guilty, including her parental rights to her daughter and unborn child, and she signed an advice of rights form.   The parties discussed the charges, the terms of the plea agreement, and the consequences of the plea.   Petitioner stated that she understood the plea agreement, indicated that she had no questions about the plea, and confirmed that she wanted to plead guilty.   She acknowledged that she had not been threatened or promised anything beyond what was included in the agreement.   She also agreed to a factual basis for the plea.   (ECF No. 7-5 at Pg. ID 499-512.)

Petitioner is bound by the statements that she made at the plea hearing. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).   The fact that she may

22

have been subsequently dissatisfied with her plea or may have hoped for more

lenient treatment does not render her plea unknowing or involuntary.   *See Brady*,

397 U.S. at 757.   A defendant is not entitled to withdraw a plea "merely because

he [or she] discovers long after the plea has been accepted that his [or her]

calculus misapprehended the quality of the State's case or the likely penalties

attached to alternative courses of action."   *Id*.

Petitioner asserts that her plea was involuntary because she was

forced/coerced to stipulate to the termination of her parental rights as part of the

plea agreement.   She essentially argues that such a provision violates due process

because it infringes on her fundamental right to her children and she was never

found unfit to be their parent.   However, Petitioner fails to cite any Supreme

Court precedent which holds that a plea agreement cannot include a provision

requiring the voluntary termination of parental rights, and the Court is aware of no

such cases.   This is fatal to her claim because the state courts' denials of relief

cannot be deemed contrary to clearly established Supreme Court precedent or an

unreasonable application thereof.   *See Aceval v. Maclaren*, 671 F. App'x 368,

369 (6th Cir. 2016) (denying habeas relief on a novel due process claim involving

retrial because it was unsupported by Supreme Court precedent); *Coleman v.*

*Bergh*, 804 F.3d 816, 818-19 (6th Cir. 2015) (vacating grant of certificate of

appealability on issue due to lack of Supreme Court authority).   "[I]f there is no

'clearly established Federal law, as determined by the Supreme Court' that

supports a habeas petitioner's legal argument, the argument must fail."   *Miskel v.*

*Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)).

Moreover, while parental rights are clearly fundamental, *see, e.g., M.L.B. v.*

*S.L.B.*, 519 U.S. 102, 116 (1996); *Lassiter v. Dep't of Soc. Svs. of Durham Cnty.,*

*N.C.*, 452 U.S. 18, 27 (1981) ("[T]he companionship, care, custody and

management of [one's] children is an important interest that undeniably warrants

deference and, absent a powerful countervailing interest, protection." (internal

quotation marks omitted)), *Eidson v. State of Tenn. Dep't of Children's Svs.*, 510

F.3d 631, 635 (6th Cir. 2007) ("[P]arents have a fundamental liberty interest in the

custody of their children."), they are not absolute and can be subject to

governmental restriction.   *See, e.g., United States v. Widmer*, 785 F.3d 200, 207-

08 (6th Cir. 2015) (citing cases).   Fundamental rights can also be waived.   *See,*

*e.g., New York v. Hill*, 528 U.S. 110, 114 (2000) (citing cases and confirming that

the Supreme Court has presumed the availability of waiver even when it involves

"the most basic rights of criminal defendants"); *Barker v. Wingo*, 407 U.S. 514,

525-26 (1972) (discussing waiver of accused's fundamental rights).   To be sure,

criminal defendants regularly waive fundamental rights, such as the right to a jury

24

trial, when they accept plea agreements.  *See United States v. Barnes*, 278 F.3d 644, 647-48 (6th Cir. 2002) (citing cases).   The waiver of fundamental rights must be knowing, voluntary, and intelligent.  *See, e.g., Hill*, 528 U.S. at 114; *Brady*, 397 U.S. at 748.

As discussed, the plea hearing record reveals that Petitioner consulted with defense counsel about the terms and consequences of her plea, that she understood that her plea agreement required that she stipulate to the termination of her parental rights as to her daughter and unborn baby, and that she voluntarily agreed to the terms of the plea agreement and was not coerced or forced into accepting it. (ECF No. 7-5 at Pg. ID 499-512.)   The relinquishment of parental rights did not render Petitioner's plea involuntary.  *See Pitchford v. United States*, No. 3:21-CV-231-RJC, 2021 WL 2110885, at *5 (W.D.N.C. May 25, 2021) (rejecting claim that loss of parental rights rendered a guilty plea involuntary and denying federal prisoner's 28 U.S.C. § 2255 motion).   Because Petitioner knowingly and voluntarily agreed to the termination of her parental rights as part of her plea agreement, the State was not required to prove that she was an unfit parent—as might be the case in child custody proceedings—in order to satisfy due process.

Petitioner also alleges that she was not adequately informed of the consequences of her plea and the rights that she would be giving up.   Clearly

established Supreme Court law requires a trial court to inform a criminal

defendant of the relevant circumstances and the direct consequences of a plea,

*Brady*, 397 U.S. at 748, but not its collateral consequences.   *Hill v. Lockhart*, 474

U.S. 52, 56 (1985); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

Petitioner's claim, however, is contradicted by the record.   At the plea

hearing, the prosecutor described the charges, the elements of second-degree child

abuse, the terms of the plea agreement, including the requirement that Petitioner

stipulate to the termination of her parental rights, and the maximum sentence that

she faced.   The trial court further advised Petitioner of several rights that she

would be giving up by pleading guilty and referenced the advice of rights form.

Petitioner indicated that she understood the charges, the terms of the plea

agreement, and the rights that she would be giving up by pleading guilty, and she

signed the advice of rights form.   She also indicated that she conferred

"extensively" with counsel about such matters and had no further questions.

(ECF No. 7-5 at Pg. ID 499-512.)

Petitioner does not specify what relevant necessary information the trial

court or counsel failed to convey to her concerning her rights, her plea, or the

consequences of her plea.   Conclusory allegations are insufficient to warrant

federal habeas relief.  *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)

(conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) (citing *Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Having reviewed the record, the Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary and did not violate her due process rights.

Moreover, to the extent that Petitioner asserts that the plea colloquy was inadequate under Michigan law, she fails to state a claim upon which habeas relief may be granted.   Such a claim is not cognizable on federal habeas review because it is a state law claim.   *See, e.g., Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (ruling that district court erred in granting habeas relief on claim that plea colloquy failed to conform to state rules).   State courts are the final arbiters of state law and federal courts will not intervene in such matters.   *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner also seems to assert that the plea agreement, namely the parental

termination provision, and/or the state court's denial of her motion for relief from judgment violated her equal protection rights because she was treated differently than other criminal defendants and other parents in custody cases.[2]   To prevail on an equal protection claim, a habeas petitioner must show that he or she was intentionally treated differently from other similarly situated people and that there is no rational basis for the difference in treatment.   *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439 (1985).

In this case, Petitioner fails to allege any facts showing she was treated differently than a person similarly situated to her with respect to the plea agreement.   As discussed, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.   *Workman*, 178 F.3d at 771; *Wogenstahl*,

---

[2] Respondent contends that the equal protection portion of this claim is unexhausted and procedurally defaulted because Petitioner did not raise it on direct appeal or collateral review in the state courts and no longer has an available remedy.   While the Court agrees that Petitioner did not list the issue in her statement of questions presented in those proceedings, she did reference the issue briefly in the body of her brief on direct appeal.   (*See* ECF No. 7-12 at Pg ID 1293.)   While there may be some question as to whether that constitutes a "fair presentation" of the claim to the state courts, *see, e.g., Wagner v. Smith*, 581 F.3d 410, 415-16 (6th Cir. 2009); *Vasquez v. Jones*, 496 F.3d 564, 568 (6th Cir. 2007), the Court will assume, for purposes of this opinion, that it does.

668 F.3d at 335-36; *Washington*, 455 F.3d at 733; *see also Perez v. Hemingway*, 157 F. Supp. 2d 790, 795 (E.D. Mich. 2001) (conclusory allegations that federal prisoner's equal protection rights were violated did not justify relief).   Moreover, the law involving Native Americans and the cases she cites concerning the involuntary loss of custody and forced sterilization are inapposite to her situation—she voluntarily agreed to stipulate to the termination of her parental rights as part of her plea agreement.   Petitioner fails to sufficiently allege or establish a violation of her equal protection rights.

Petitioner is also not entitled to habeas relief on any claim that her equal protection rights—or any other rights—were violated during her post-conviction collateral review proceedings.   The Sixth Circuit "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review" because "the writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration."   *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-48 (6th Cir. 1986)).   Habeas relief is not warranted on this claim.

## B.    Factual Basis Claim

Next, Petitioner asserts that she is entitled to habeas relief because the

29

factual basis for her plea was inadequate, and she is innocent. Respondent

contends that this claim is not cognizable on habeas review and that it lacks merit.

Petitioner raised this issue on direct appeal and the Michigan Court of

Appeals denied leave to appeal for lack of merit in the grounds presented. (ECF

No. 7-11 at Pg ID 628.) She also raised the issue on collateral review and the

trial court denied relief finding that Petitioner's own testimony at the plea hearing

provided a sufficient factual basis to support her second-degree child abuse

conviction. (ECF No. 7-10 at Pg ID 622-23.)

The state courts' decisions are neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts. Under Michigan law,

before a trial court may accept a criminal defendant's plea, "the court, by

questioning the defendant, must establish support for a finding that the defendant

is guilty of the offense charged or the offense to which the defendant is pleading."

Mich. Ct. R. 6.302(D)(1). A violation of a state law procedural rule, however,

does not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S.

62, 67-68 (1991). The state trial court's ruling that there was a sufficient factual

basis for Petitioner's second-degree child abuse plea under Michigan law is

entitled to deference on federal habeas review. *See Lewis*, 497 U.S. at 780 (state

courts are the final arbiters of state law and federal courts will not intervene in

such matters); *see also Bradshaw*, 546 U.S. at 76 ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford*, 288 F.3d at 860.

Furthermore, there is no federal constitutional requirement that a factual basis be established to support a guilty plea.   *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if [she] is unwilling or unable to admit [her] participation in the acts constituting the crime."); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); *see also Watkins v. Lafler*, 517 F. App'x 488, 500 (6th Cir. 2013) ("The Constitution does not require a factual basis to establish a plea of guilty"); *Bonior v. Conerly*, 416 F. App'x 475, 478 (6th Cir. 2010) (stating that "[t]here is no constitutional requirement that a trial judge inquire into the factual basis of a plea" and affirming denial of habeas relief).   Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Petitioner is also not entitled to habeas relief based upon her claim that she is innocent.   Claims of actual innocence, even those based on newly-discovered evidence, "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).   "[F]ederal habeas

courts sit to ensure that individuals are not imprisoned in violation of the

Constitution—not to correct errors of fact."   *Id*.   In *House v. Bell*, the Supreme

Court declined to answer the question left open in *Herrera*—whether a habeas

petitioner may bring a freestanding claim of actual innocence.   *House v. Bell*, 547

U.S. 518, 555 (2006) (noting that in a capital case a "truly persuasive

demonstration of actual innocence" would render a defendant's execution

unconstitutional and warrant federal habeas relief "if there were no state avenue

open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing

claim of actual innocence based upon newly discovered evidence does not warrant

federal habeas relief.   *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir.

2007) ("Since the Supreme Court has declined to recognize a freestanding

innocence claim in habeas corpus, outside the death-penalty context, this court

finds that [Petitioner] is not entitled to relief under available Supreme Court

precedent."); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007); *see also*

*Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of

habeas relief on similar claim).   Thus, Petitioner fails to state a claim upon which

habeas relief may be granted as to this issue.

Similarly, Petitioner is not entitled to habeas relief on any claim that there was insufficient evidence to support her conviction or that she had a defense to the charges.   A guilty or no contest plea involves a waiver of many constitutional rights, including the right to a trial where the prosecution has the burden of proving guilt beyond a reasonable doubt, the right to confront adverse witnesses, and the right to present evidence in one's defense.   *See Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008) (citing *Boykin*, 395 U.S. at 243).   A defendant who pleads guilty or no contest waives all non-jurisdictional pre-plea issues. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).   Consequently, any claim by Petitioner challenging the sufficiency of the evidence or raising some other defense is foreclosed by her plea.   *See Broce*, 488 U.S. at 569; *Tollett*, 411 U.S. at 267; *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) (unconditional plea waives non-jurisdictional collateral challenge to the sufficiency of evidence). As such, habeas relief is not warranted on this claim.

### C.    Sentencing Claims

Petitioner next asserts that she is entitled to habeas relief because several offense variables of the state sentencing guidelines were improperly scored and were based on hearsay/inaccurate information and because her sentence is disproportionate.   Respondent contends that these claims are not cognizable in

part and lack merit.

Petitioner raised sentencing issues on direct appeal and the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (ECF No. 7-11 at Pg ID 628.) She also raised sentencing issues on collateral review and the trial court denied relief finding that her offense scoring issues were decided against her on direct appeal, that the court properly considered certain information in calculating the guidelines, and that she failed to show that her sentence was disproportionate. (ECF No. 7-10 at Pg ID 623-24.)

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, the Court notes that Petitioner's sentencing claims are likely moot. In order to attack a state conviction in a federal habeas proceeding, a petitioner must be "in custody" pursuant to that conviction when the habeas petition is filed. *See Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam); *see also* 28 U.S.C. § 2254(a); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). If a petitioner is released during the pendency of the case, a habeas court is not divested of jurisdiction as long as the petitioner was "in custody" when the petition was filed. *Carafas*, 391 U.S. at 238; *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988). At the time she instituted this action, Petitioner met the "in custody" requirement because

she was in prison.

However, a petitioner's release from custody may moot a habeas claim.

The United States Constitution provides that a federal court has jurisdiction only

over actual "cases" or "controversies."   U.S. Const. art. III, § 2.   As the Supreme

Court has explained:

> This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a "personal stake in the outcome" of the lawsuit. . . . This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal citations omitted).   Thus, a case

may become moot and outside a court's jurisdiction if "events occur during the

pendency of a litigation which render the court unable to grant the requested

relief."   *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir.1986).   Mootness is a

jurisdictional issue which may be raised by a court sua sponte.   *North Carolina v.*

*Rice*, 404 U.S. 244, 246 (1971).

Once a habeas petitioner's sentence has expired, some concrete and

continuing injury, some "collateral consequence" of the conviction other than the

now-ended incarceration, must exist if the action is to proceed in federal court and

not be considered moot.   *Spencer*, 523 U.S. at 7.   Generally, a habeas petition

challenging a criminal conviction will not be moot because a criminal conviction ordinarily has continuing collateral consequences.   When a petitioner has been discharged from his or her sentence and a habeas claim only concerns sentencing, however, there are no continuing collateral consequences that can be redressed by a favorable court decision.   *See Lane v. Williams*, 455 U.S. 624, 631 (1982).

Such is the case here with respect to Petitioner's sentencing claims because she has been discharged from her sentence.   This Court can provide no further remedy.   Her sentencing claims are therefore moot.   *See Hood v. Wilson*, 389 F. App'x 522 (6th Cir. 2010) (ineffective assistance of appellate counsel claim involving sentencing was moot given petitioner's discharge from custody); *United States v. Waltanen*, 356 F. App'x 848, 851 (6th Cir. 2009) ("If a prisoner does not challenge the validity of the conviction but rather only challenges his [or her] sentence or some aspect of it, the request for relief is moot once the challenged portion of the sentence has expired.").

Moreover, even if Petitioner's sentencing claims are not moot, they do not warrant habeas relief.   A sentence imposed within the statutory limits is generally not subject to federal habeas review.   *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).   Claims that arise out of a state trial court's sentencing decision are not cognizable upon habeas

review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.   *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).   In this case, Petitioner's sentence is within the statutory maximum for her offense.   *See* Mich. Comp. Laws § 750.136b(3), (4)(a) (authorizing a 10-year maximum sentence for a first offense of second-degree child abuse).   Consequently, her sentence is insulated from habeas review absent a federal constitutional violation.

Petitioner's claim that the trial court erred in scoring several offense variables of the Michigan sentencing guidelines is not cognizable on habeas review because it is a state law claim.   *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).   Alleged errors in scoring certain offense variables and determining the sentencing guideline range do not warrant federal habeas relief.   Again, state courts are the final arbiters of state law and the federal

37

courts will not intervene in such matters.   *Lewis*, 497 U.S. at 780; *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.   Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Petitioner also seems to assert that the scoring of the guidelines, and thus her sentence, was based upon hearsay in violation of her confrontation rights and based on inaccurate information in violation of her due process rights. Evidentiary rules and the Confrontation Clause, however, do not apply in sentencing proceedings.   *See, e.g., United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016) (citing cases); *United States v. Paull*, 551 F.3d 516, 527-28 (6th Cir. 2009) (citing cases).

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct.   *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).   To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.   *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984);

38

*Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992).

Petitioner makes no such showing.   Rather, the record indicates that she had a sentencing hearing before the state trial court with an opportunity to challenge the sentencing information.   She was also able to challenge her sentence on direct appeal and collateral review in the state courts.   Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing her sentence which she had no opportunity to correct.

Petitioner's claim that her sentence is disproportionate is not cognizable on federal habeas review because it is a state law claim.   *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (ruling that the Eighth Amendment does not require strict proportionality and that Michigan prisoner's disproportionate sentence claim was not cognizable on habeas review); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, *1 (6th Cir. July 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his [or her] sentence is disproportionate under state law is also not cognizable on habeas review."). There is no federal constitutional right to individualized sentencing.   *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).   As noted, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328.   To the extent that Petitioner

contests the state courts' application or interpretation of state law, she is not

entitled to relief.   *See Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Petitioner fails to state a claim upon which federal habeas relief may be granted as

to this issue.

Further, Petitioner also cannot establish that her sentence constitutes cruel

and unusual punishment under the Eighth Amendment.   The United States

Constitution does not require strict proportionality between a crime and its

punishment.   *Harmelin*, 501 U.S. at 965.   A sentence that falls within the

maximum penalty authorized by statute "generally does not constitute 'cruel and

unusual punishment.'"   *Austin v. Jackson*, 213 F.3d 298, 302 (2000) (internal

citation omitted).   As discussed, Petitioner's sentence is within the statutory

maximum.   The state trial court thus acted within its discretion in imposing her

sentence and there is no extreme disparity between her crime and sentence so as to

offend the Eighth Amendment.   Habeas relief is not warranted on Petitioner's

sentencing claims.

### D.    Ineffective Assistance of Trial Counsel Claim

Next, Petitioner asserts that she is entitled to habeas relief because trial

counsel was ineffective for failing to investigate/challenge the forensic interview

protocols, for failing to inform her of her rights and protect those rights, for

incorrectly advising her on child abuse law, for advising her to plead guilty, and for failing to challenge the scoring of certain offense variables of the state guidelines at sentencing.   Respondent contends that this claim lacks merit.

Petitioner raised this issue in part on direct appeal and the Michigan Court of Appeals denied relief for lack of merit in the grounds presented.   (ECF No. 7-11 at Pg ID 628.)   Petitioner also raised the issue more fully on collateral review and the trial court denied relief because ineffective assistance of counsel was previously considered by the Michigan Court of Appeals and Petitioner did not argue a retroactive change in the law.   (ECF No. 7-10 at Pg ID 625-26.)

The state courts' denials of relief are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he or she was denied the Sixth Amendment right to the effective assistance of counsel.   First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).   To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable

41

professional assistance."   *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's errors, [he/she] would not have pleaded guilty and would have insisted on going to trial."   *Hill*, 474 U.S. at 59.   The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."   *Id*.   The Supreme Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'"   *Id.* at 59-60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.   "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."   *Harrington*, 562 U.S. at 105 (internal and end citations omitted).   "When § 2254(d) applies, the question is not whether

42

counsel's actions were reasonable.   The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Id*.

Additionally, the Supreme Court has emphasized the extraordinary deference to

be afforded trial counsel in plea bargaining.   *See Premo v. Moore*, 562 U.S. 115,

125 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the

more essential when reviewing the choices an attorney made at the plea bargain

stage"); *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011) (citing *Premo*).

To the extent that Petitioner asserts that defense counsel was ineffective for

failing to investigate/challenge the forensic interview protocols or take other

action during the pre-plea period, she is not entitled to federal habeas relief.   It is

well-settled that claims about the deprivation of constitutional rights that occur

before the entry of a guilty or no contest plea are foreclosed by the plea.   *Broce*,

488 U.S. at 569; *Tollett*, 411 U.S. at 267.   The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.   When a criminal defendant has solemnly admitted in open court that he [or she] is in fact guilty of the offense with which he [or she] is charged, he [or she] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He [or she] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he [or she] received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.   Simply stated, a defendant who pleads guilty or no

43

contest generally waives any non-jurisdictional claims that arose before the plea. In such a case, a reviewing court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary.   *Broce*, 488 U.S. at 569.   Accordingly, Petitioner's claim that counsel was ineffective for failing to take certain actions during the pre-trial period is foreclosed by her plea and does not warrant relief.

Petitioner, however, also seems to assert that trial counsel's failure to sufficiently investigate the forensic interview protocols affected her plea decision. It is true that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary.   *Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned determination that investigation is not warranted).

In this case, Petitioner fails to show that trial counsel did not sufficiently investigate such matters or that she was prejudiced by counsel's conduct.   First, trial counsel may have reasonably decided that further investigation of the forensic interview protocols was unnecessary given that co-defendant's counsel cross-examined the detective about such matters at the preliminary examination and given that the interview was not admitted into evidence.   (ECF No. 7-3 at Pg

44

ID 461-62.)   Second, while counsel did not seek a forensic interview expert,
counsel was aware of the victim's mental health and behavioral issues, had a
strategy of investigating the cause of the victim's injuries and the possibility of
self-harm, and successfully moved for the appointment of a child abuse expert.
(ECF No. 7-4 at Pg ID 489, 491, 495.)   Third, while Petitioner presents an expert
report challenging the forensic interview protocols, such information, at best,
would have resulted in a battle among the experts and would not have necessarily
invalidated the victim's interview nor exonerated Petitioner given that the victim
testified at the preliminary examination that Petitioner hurt her (and would
presumably testify similarly at trial) and given the other evidence of guilt, such as
the emergency room physician's testimony and the photographs of the victim's
injuries.

Petitioner also asserts that trial counsel failed to inform her of her rights and
to protect those rights, gave her incorrect advice on child abuse law, and erred in
advising her to plead guilty.   However, such claims are largely conclusory.   For
example, Petitioner fails to explain or provide evidence as to what information
counsel failed to convey, how counsel's advice about child abuse law or her plea
was erroneous, what rights counsel failed to protect, or what counsel could have
discovered that was exculpatory or so beneficial to the defense that it would have

affected her plea decision. As discussed, conclusory allegations are insufficient to warrant habeas relief. *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).

The record also belies this claim. At the plea hearing, the trial court questioned Petitioner about her understanding of charges, the plea agreement, and the rights that she would be giving up by pleading guilty and ensured that she had no further questions about her plea. Again, Petitioner acknowledged her understanding of those matters and stated that she had discussed her case "extensively" with counsel and wanted to plead guilty. (ECF No. 7-5, Pg ID 499-512.) Petitioner fails to show that counsel incorrectly or insufficiently advised her about child abuse law or her plea.

Counsel's strategy in pursuing a plea and foregoing other avenues of defense was also reasonable given the serious charges against Petitioner, the evidence of guilt presented at the preliminary examination, the uncertainties of trial, and the potential for Petitioner to be convicted of first-degree child abuse and

torture, which both have maximum sentences of life in prison, Mich. Comp. Laws §§ 136b(2); 750.85, as opposed to second-degree child abuse, which has a first offense maximum sentence of 10 years in prison, Mich. Comp. Laws § 136b(3), (4)(a).   *See, e.g., West v. Berghuis*, 716 F. App'x 493, 497 (6th Cir. 2017) (counsel was not constitutionally ineffective in recommending a plea to minimize the petitioner's exposure to a more serious charge even if doing so meant abandoning a defense).   Petitioner fails to show that counsel's performance in foregoing further investigation and possible defenses and advising Petitioner to accept the plea agreement was unreasonable or otherwise constitutionally deficient.

Furthermore, Petitioner fails to show that she was prejudiced by counsel's conduct, *i.e.*, that but for counsel's advice, she would have rejected the plea agreement and insisted on going to trial.   To be sure, the potential evidence against her was significant, given the preliminary examination testimony (ECF No. 7-2 at Pg ID 370, 378-380, 391, 395-98; ECF No. 7-3 at Pg ID 460), and given that her boyfriend was willing to testify against her as part of his own plea agreement.   (ECF No. 7-5 at Pg ID 506.)   Petitioner also faced first-degree child abuse and torture charges, which could have resulted in a much more severe sentence.   Petitioner fails to establish that trial counsel was ineffective under the

*Strickland/Hill* standard.   The Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to properly challenge the scoring of the offense variables and her sentence.   As with the underlying sentencing claims, this claim is likely moot because Petitioner has been fully discharged from her sentence.   *See* discussion *supra* Section IV.C. Moreover, given the state courts' denials of relief on Petitioner's sentencing claims, she cannot establish that counsel erred and/or that she was prejudiced by counsel's conduct.   Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.   *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). Habeas relief is not warranted on this claim.

### E.    Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner asserts that she is entitled to habeas relief because appellate counsel was ineffective for failing to raise her collateral review issues on direct appeal, for failing to retain an expert on forensic interview protocols, for withdrawing a motion to remand, and for failing to sufficiently challenge her

sentence.[3]  Respondent contends that this claim lacks merit.

Petitioner raised this issue on collateral review in the state courts and the trial court denied relief finding that appellate counsel was not ineffective under the *Strickland* standard.  (ECF No. 7-10 at Pg ID 625-27.)

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The *Strickland* standard requiring a petitioner to prove deficient performance and prejudice, as discussed *supra* Section IV.D., also applies to claims of ineffective assistance of appellate counsel.  However, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

For judges to second-guess reasonable professional judgments and

---

[3] In support of this claim, Petitioner attaches an affidavit from appellate counsel in which counsel asserts that she was ineffective for failing to retain a forensic interview protocol expert and raise an ineffective assistance of trial counsel claim and for withdrawing the motion to remand.  (ECF No. 7-7 at Pg ID 575-77.)  That affidavit, however, does not resolve the issue.  The *Strickland* analysis requires consideration of the objective reasonableness of counsel's conduct, not a subjective impression.  *See Harrington*, 562 U.S. at 109-10; *see also Jennings v. McDonough*, 490 F.3d 1230, 1247 (11th Cir. 2007) ("The *Strickland* standard of objective reasonableness does not depend on the subjective intentions of the attorney, judgments made in hindsight, or an attorney's admission of deficient performance.").

> impose on appointed counsel a duty to raise every "colorable" claim
> suggested by a client would disserve the ... goal of vigorous and
> effective advocacy .... Nothing in the Constitution or our interpretation
> of that document requires such a standard.

*Id*. at 754.   Strategic and tactical choices regarding which issues to pursue on

appeal are "properly left to the sound professional judgment of counsel." *United*

*States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).   In fact, "the hallmark of

effective appellate advocacy" is the "process of 'winnowing out weaker

arguments on appeal and focusing on' those more likely to prevail." *Smith v.*

*Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52).

"Generally, only when ignored issues are clearly stronger than those presented

will the presumption of effective assistance of appellate counsel be overcome."

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).   Appellate counsel may

deliver deficient performance and prejudice a defendant by omitting a "dead-bang

winner," defined as an issue which was obvious from the trial record and would

have resulted in reversal on appeal.   *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870

(E.D. Mich. 2003).   In other words, counsel's failure to raise an issue on appeal

can only be ineffective assistance "if there is a reasonable probability that

inclusion of the issue would have changed the result of the appeal." *McFarland*

*v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

50

In this case, Petitioner fails to show that by omitting the claims presented in her motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.   Appellate counsel raised substantial issues on direct appeal, including claims concerning the scoring of several offense variables of the state sentencing guidelines and the proportionality of her sentence, her due process rights and the voluntariness of her plea, including the termination of her parental rights, and the factual basis for her plea.   None of Petitioner's additional issues are "dead-bang winners" or reasonably likely to have resulted in reversal on appeal given the state court's denial of relief on collateral review, as well as this Court's ruling that the claims lack merit.

As to the failure to retain an expert witness on forensic interview protocols, Petitioner fails to show that appellate counsel was ineffective.   Given that Petitioner's plea was knowing, intelligent, and voluntary and that her own testimony provided a sufficient factual basis for her plea, and given that trial counsel was not ineffective for failing to retain such an expert, *see* discussion *supra* Section IV.D., Petitioner cannot establish that appellate counsel erred and/or that she was prejudiced by counsel's conduct in this regard.

With regard to the motion to remand, appellate counsel explained that she withdrew the motion to remand after considering Michigan law and the

51

unlikelihood of the trial court granting relief on any of the appellate claims in light of recent developments, as well as the trial court's unfavorable comments during Petitioner's plea and sentencing proceedings.   (ECF No. 7-7 at Pg ID 574-75.) Such conduct was arguably reasonable under the circumstances.   Nonetheless, even assuming that appellate counsel erred by withdrawing the motion to remand, Petitioner fails to show that she was prejudiced by counsel's conduct given that the underlying claims lack merit and given that, other than the forensic interview protocol expert's report, she fails to offer facts or evidence that would have been presented on remand that would have been beneficial to her appeal.   Again, conclusory allegations are insufficient to warrant habeas relief.   *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733.

Petitioner's claim that appellate counsel was ineffective for failing to sufficiently challenge her sentence, like the underlying sentencing issues, is likely moot because Petitioner has been discharged from her sentence.   *See* discussion *supra* Section IV.C.   Nonetheless, the record indicates that appellate counsel raised substantial issues on appeal—including sentencing issues—and, given the state court's denial of relief on additional issues on collateral review, Petitioner cannot establish that counsel erred and/or that she was prejudiced by counsel's

conduct.   Appellate counsel cannot be deemed ineffective for failing to raise

issues that lack merit.   *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)

("Omitting meritless arguments is neither professionally unreasonable nor

prejudicial."); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).   Thus,

habeas relief is not warranted on this claim.

## V.    Conclusion

Based upon the foregoing discussion, the Court concludes that Petitioner is

not entitled to federal habeas relief on her claims.   Accordingly, the Court

**DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas

corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   *See*

28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability

may issue only if the petitioner makes "a substantial showing of the denial of a

constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies relief on the

merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the court's assessment of the claims debatable or

wrong.   *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   When a court denies

relief on procedural grounds, a certificate of appealability should issue if it is

shown that jurists of reason would find it debatable whether the petitioner states a

53

valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.   *Id.* Petitioner makes no such showing.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).   Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 11, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 11, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager